TRINETTE G. KENT (State Bar No. 222020)
10645 North Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
Telephone:  (480) 247-9644
Facsimile:  (480) 717-4781
E-mail: tkent@lemberglaw.com

Of Counsel to
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Telephone:  (203) 653-2250
Facsimile:  (203) 653-3424

Attorneys for Plaintiff,
Veronica Munoz, *on behalf of herself and all others similarly situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Veronica Munoz, *on behalf of herself and all others similarly situated*<br><br>Plaintiff,<br><br>vs.<br><br>LG Electronics U.S.A., Inc.,<br><br>Defendant. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **INTRODUCTION**

1

1.     Plaintiff, Veronica Munoz ("Plaintiff"), brings this putative class action, on behalf of herself, and a putative class of an estimated millions of consumers against LG Electronics U.S.A., Inc. ("LG," "LG Electronics," or "Defendant").

2.     This is a class action against LG for misrepresenting the energy efficiency of its televisions manufactured between 2011 and the present, which feature ABC (automatic brightness control, or "Energy Saving") and MDD (motion detection dimming, or "Motion Eye Care") technologies.   LG misrepresents that its televisions are the most energy efficient of televisions (the "Misrepresentation") in a uniform fashion as a matter of company policy through (a) the ENERGYGUIDE labels affixed to its products, and (b) the ENERGY STAR® logo, which indicates that televisions meet the ENERGY STAR® standards for energy efficiency.

3.     ENERGY STAR is a U.S. Environmental Protection Agency ("EPA") voluntary program that helps businesses and individuals save money and protect the climate through superior energy efficiency.   In 1992, the EPA introduced ENERGY STAR as a voluntary labeling program designed to identify and promote energy-efficient products to reduce greenhouse gas emissions.   The ENERGY

CLASS ACTION COMPLAINT

STAR label is now on major appliances, office equipment, lighting, new homes, and electronics.[1]

4.      Despite LG's claims, independent testing commissioned by the Natural Resources Defense Council ("NRDC") reveals that its television are programmed to disable key energy-saving features when consumers adjust the default picture settings.  Moreover, LG specifically optimized and tailored these energy-saving features to create a reduction in energy usage during testing with the U.S. Department of Energy ("DOE") that is not reflected under real world conditions.  Thus, the NRDC estimates that LG's conduct <u>doubles</u> the expected energy cost to operate its televisions.

5.      The Misrepresentation communicates to consumers that LG's televisions are the most energy efficient of televisions.  The Misrepresentation is part of the basis of the bargain that consumers pay a higher up-front purchase price for the televisions but save more on energy bills over time using the product.  This is an attractive incentive to many consumers who demand energy efficient appliances and electronics.[2]

6.      To capitalize on this demand, LG engaged in a long-term advertising campaign in which it utilized various forms of media to advertise that its

---

[1] https://www.energystar.gov/products/electronics/televisions.

[2] *See*  http://www.nielsen.com/us/en/insights/news/2015/consumers-want-energy-efficiency-but-what-will-they-do-about-it.html ("consumers still view home efficiency as their top unmet demand need … ") (last visited Oct 5, 2016)

CLASS ACTION COMPLAINT

televisions are among the most energy efficient of televisions, as the televisions meet the ENERGY STAR® program standards for energy efficiency.  According to its website, LG "offers more than 800 ENERGY STAR qualified models in a range of product categories," including televisions.[3]  Moreover, LG boasts on its website that it was recognized as the ENERGY STAR® Partner of the year in 2015:



LG has earned the U.S. Environmental Protection Agency's **2015 ENERGY STAR® Partner of the Year Award.**

7.      Consumers look for the ENERGY STAR® logo when evaluating whether a product is among the most energy efficient in its class.  "The ENERGY STAR® logo is a critical tool for consumers looking to save energy and money with their appliances," said Scott Blake Harris, the DOE's General Counsel.  In fact, "[t]he ENERGY STAR mark ranks among the highest level of influence on product purchase among all consumer emblems, similar in ranking to the Good Housekeeping Seal."  Indeed, a 2012 National Association of Home Builders ("NAHB") Home Trends & Buyer Preferences survey also acknowledged that ENERGY STAR® was the feature most desired by appliance purchasers, picked by 94% of respondents.

---

[3] http://www.lg.com/us/energy-star

4

CLASS ACTION COMPLAINT

8.    Similarly, the ENERGYGUIDE label affixed to every Product provides consumers with an estimate of the television's annual energy costs. Additionally, the ENERGYGUIDE label provides a range of energy costs for similar models.  This allows consumers to understand how a product's energy use compares to the energy use of similar products.[4]  Accordingly, a single glance at one of Defendant's ENERGYGUIDE labels communicates the message that the Products are among the most energy efficient of televisions.

9.    However, in September 2016, the NRDC, with the help of Ecos Research ("Ecos"), released a report entitled *The Secret Costs of Manufacturers Exploiting Loopholes in the Government's TV Energy Test: $1.2 Billion For Consumers & Millions of Tons of Pollution* (the "NRDC Report").  The NRDC Report was based on (i) a comprehensive laboratory testing of selected televisions energy efficiency, and (ii) additional in-store testing to observe the persistence of key energy-saving features.[5]

10.    The NRDC Report concluded that LG's energy-saving features are active during the DOE's testing of the Products, but are designed to be disabled

---

[4]  *See*  https://www.consumer.ftc.gov/articles/0072-shopping-home-appliances-use-energyguide-label (directing consumers to "Use the EnergyGuide label to compare the energy use of similar models.") (last visited Oct 5, 2016)

[5]        https://www.nrdc.org/sites/default/files/costs-manufacturers-exploiting-loopholes-tv-energy-test-report.pdf ("NRDC Report")

5

CLASS ACTION COMPLAINT

whenever a consumer changes the default picture settings.[6]   Thus, LG's Misrepresentation – that the Products are among the most energy efficient of televisions – is based on energy-saving features that LG has ensured will be silently and invisibly terminated or inactive during normal consumer use.  Notably, without these features active, power use increased in comparison to out-of-the box settings."[7]   Without these features, the Products, all of which received the ENERGY STAR® label, would not so qualify.

11.    The promised benefits of efficiency and energy-savings were illusory. For Class Members who purchased LG's televisions, the promised savings from reduced energy bills never came.  Instead, LG deployed firmware to make it all but certain that key energy-saving features would be inactive during normal consumer use.

12.    Thus, Class Members pay higher costs in two ways: a higher up-front purchase price due to the substantial price premium that the Misrepresentation commands in the marketplace, and/or higher energy usage (and cost) over the product's life, since its actual energy consumption is substantially higher than what was promised.  Each Class Member paid a higher initial price for their television, and will pay higher energy costs every month – for the anticipated use of the television.

---

[6] *Id*.
[7] *Id*.

CLASS ACTION COMPLAINT

13.    LG has profited immensely from the selling its televisions as energy efficient, through ENERGY STAR® labeling, having earned over billions of dollars for units sold in North America alone.

## JURISDICTION AND VENUE

14.    This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest, fees, and costs, and the matter is a class action in which a member of the class of Plaintiff is a citizen of a State different from any defendant.

15.    Additionally, this Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1391, because said claims derive from a common nucleus of operative facts.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial portion of the events giving rise to Plaintiff and Class and/or Collective Action Members' claims occurred in the Northern District of California, as LG: (1) is authorized to conduct business in this District, and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District, (2) presently does substantial business in this District, and (3) is subject to personal jurisdiction in this District.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PARTIES

17.    At all relevant times Plaintiff was a resident of San Jose, California, and a citizen of the state of California.

18.    Plaintiff on behalf of herself, and the putative National class, and California sub-class, brings this class action lawsuit against LG.

19.    Defendant LG is an international corporation with its United States headquarters in Huntsville, AL.  LG Electronics was founded in 1958 as Goldstar, in the aftermath of the Korean War.[8]  By 2015 LG was profiting millions of dollars, and for the first three months of the year profits were at $36 million.[9]

## FACTUAL ALLEGATIONS

**A. LG Communicates the Misrepresentation**

20.    LG communicates the Misrepresentation through (a) the ENERGYGUIDE labels affixed to its televisions, and (b) ENERGY STAR® logos, which indicate that the televisions meet the ENERGY STAR® standards for energy efficiency.  A single glance at one of Defendant's ENERGYGUIDE labels or the ENERGY STAR® logo communicates the message that the televisions are among the most energy efficient of televisions.

---

[8] https://en.wikipedia.org/wiki/LG_Electronics
[9] http://www.wsj.com/articles/tv-sales-slump-at-lg-offsetting-smartphone-success-1430288273?alg=y

CLASS ACTION COMPLAINT

21.    LG has articulated the importance of energy efficiency to its brand identity.  LG represents that it is "committed to developing the most innovative and energy-efficient products that provide consumers with superior performance while achieving significant energy savings and lessening the impact on the world around us."[10]

## B. The ENERGYGUIDE Label Promise and Its Significant Effect on Consumers

22.    The Federal Trade Commission ("FTC") requires all televisions manufactured after May 10, 2011 to affix or display ENERGYGUIDE labels.[11]

23.    "Unlike many years ago, before flat screens and plasma, today's televisions vary widely in the amount of energy they use," said FTC Chairman Jon Leibowitz commenting on the decision to expand the ENERGYGUIDE program to televisions.  "By comparing information on the EnergyGuide labels, consumers will be able to make better-informed decisions about which model they choose to buy, based on how much it costs to operate per year."[12]

24.    The central purpose of the ENERGYGUIDE label is to inform consumers which products are among the most energy efficient in the marketplace.

---

[10] http://www.lg.com/us/energy-star

[11] A *vailable at* https://www.ftc.gov/news-events/press-releases/2010/10/starting-2011-ftc-will-require-energyguide-labels-televisions (last visited October 5, 2016)

[12] *Id.*

CLASS ACTION COMPLAINT

As the FTC website commented, "[ENERGYGUIDE] tells how much energy an appliance uses and makes it easier to compare the energy use of similar models."[13]

25.   A typical ENERGYGUIDE label used by Defendant appears below:



26.   Defendant's ENERGYGUIDE labels reveal that its televisions purportedly use a fraction of the energy used by "Similar Models."   Therefore, ENERGYGUIDE labels communicate the Misrepresentation: this television is purportedly among the most energy efficient of televisions.

### C. The ENERGY STAR® Promise and Its Significant Effect on Consumers

27.   ENERGY STAR® is a government initiative designed to "identify and promote energy-efficient products in order to reduce energy consumption, improve energy security, and reduce pollution through voluntary labeling of, or other forms of communication about, products and buildings that meet the highest energy conservation standards."   *See* 42 U.S.C. § 6294a.   The program is jointly administered by the DOE and the Environmental Protection Agency ("EPA").

---

[13] *Energy Guidance: Appliance Shopping with the Energy Guide Label available at* https://www.consumer.ftc.gov/articles/0072-shopping-home-appliances-use-energyguide-label (last visited October 5, 2016).

CLASS ACTION COMPLAINT

28.    The ENERGY STAR® program is not a regulatory program; rather, it consists of voluntary partnerships (with licensing agreements) between the DOE/EPA and industry participants that commit to manufacture products that meet the very highest standards of energy efficiency.

29.    Because ENERGY STAR® is widely recognized as the premier brand for energy efficient products, participation in the ENERGY STAR® program has a significant impact on the marketability of products.  The most important tool used in the ENERGY STAR® program is the ENERGY STAR® logo.

30.    The message and promise conveyed by the ENERGY STAR® logo is that the product is among the most energy efficient of similar products available in the marketplace.  An ENERGY STAR® certification allows consumers to maximize their energy-savings, while simultaneously protecting the environment. National retailers that dominate the television market rely extensively on ENERGY STAR®-related promotions, as well as the distinctive logo, to sell televisions and bring consumers to their stores:

CLASS ACTION COMPLAINT



31.     The campaign to promote ENERGY STAR® has continued for almost two decades.  To promote the message of energy efficiency and savings, the EPA launched a broad outreach campaign in 1997, encouraging consumers to look for the distinctive ENERGY STAR® label.  The campaign prominently mentioned the environmental benefits of the ENERGY STAR® program, but the focus remained on the financial savings that consumers could realize through superior energy efficiency.  According to the EPA, the first consumer campaign had three key messages:

> **ENERGY STAR saves you money and protects the environment.  Use of qualified products in your home can mean up to 30 percent savings.**
>
> **The second price tag.  Products have two price tags: the purchase price plus the cost of electricity needed to use the product over its lifetime.**
>
> **An easy choice.  Either the product is energy efficient because it displays the ENERGY STAR label, or it isn't.**

12

32.     These marketing and educational efforts have culminated in one of the most recognizable, global symbols for energy efficiency.  Scott Blake Harris, General Counsel for the DOE, has stated that "[t]he ENERGY STAR® label is a critical tool for consumers looking to save energy and money with their appliances."

33.     In fact, the ENERGY STAR® label was *specifically engineered* to convey a simple message to consumers:  that a given product is one of the most efficient of similar products within the market.  It is "extremely successful as an informational device."  Declaration of Catherine Zoi, Assistant Secretary, Office of Energy Efficiency and Renewable Energy, *LG Electronics U.S.A., Inc. v. DOE, et al.*, No. 09-2297-JDB (D.C. Dec. 23, 2009), Dkt. No. 10-7, at ¶ 19.  It sends an unequivocal message to consumers.

34.     The DOE and EPA have found that "[s]ubstantial portions of U.S. households in the surveyed population recognize, understand, and are influenced by the ENERGY STAR® label."  This is supported by a prominent national survey conducted in 2011, which found that 85% of households had at least a general understanding of the label's purpose, including 75% that had a "high understanding."

35.     The same survey found the ENERGY STAR® logo materially influenced the purchasing decisions of 88% of households that recognized it,

CLASS ACTION COMPLAINT

including 76% whose purchase decisions were influenced "very much" or "somewhat."

36.    A 2012 NAHB Home Trends & Buyer Preferences survey[14] found that ENERGY STAR® appliances were the features most desired by homebuyers, picked by 94% of respondents.  There is no doubt that appliance manufacturers such as LG consider the ENERGY STAR® label to be a "promise" of "savings" and "energy efficiency."

37.    Participation in the ENERGY STAR® program has a significant impact on the marketability of products.  The message conveyed by the ENERGY STAR® logo is that the product is among the most efficient of similar products available in the marketplace.

38.    Generally, consumers can expect ENERGY STAR® certified televisions to be on average, 25 percent more energy efficient than conventional models, saving energy in all usage modes:  sleep, idle, and on.[15]

**D. The NRDC Report and The Real Energy Use of LG Televisions**

39.    LG televisions sold since 2011 are tested by the U.S. DOE to measure television energy use.  The DOE measures the energy use of new television models while playing a 10-minute video of assorted content developed by the International

---

[14] According to the NAHB, these results were obtained by surveys performed by NAHB and Better Homes and Gardens.

[15] *Available at* https://www.energystar.gov/products/electronics/televisions (last visited Oct. 5, 2016).

CLASS ACTION COMPLAINT

Electrotechnical Commission ("IEC") standards organization.[16]   The testing is conducted with the default picture settings activated.   As the NRDC Report explains:

> **The results are used to determine the annual energy use listed on yellow EnergyGuide labels** (see example below), which are mandated by the Federal Trade Commission (FTC) to **appear on every television sold in stores**.  This allows consumers to compare the TV's energy use against the energy use of similar-size models before purchase.
>
> The test results also are used when manufacturers seek approval to display the **ENERGY STAR® label to indicate that** the **model is among the more energy efficient on the market**.

(emphasis added).[17]

40.     In the 2016 NRDC Report, the NRDC and Ecos conducted comprehensive laboratory testing on a select LG television, specifically, model number 58UF8300.  The television was equipped with two energy-saving features: (i) a motion detection dimming program ("MDD") and, (ii) an automatic brightness control ("ABC").[18]

---

[16] *https://www.nrdc.org/media/2016/160921-0*
[17] NRDC Report.
[18] *Id*. at 12.

15

41.    MDD, referred to as "Motion Eye Care" by LG, decreases the brightness of the television screen when rapid scene changes occur.  This reduction in screen brightness can produce energy-savings.[19]

42.    ABC, referred to as "Energy Saving" by LG, decreases television screen brightness based upon the amount of ambient light detected.  When ambient light decreases, the ABC decreases the screen brightness.  This reduction in screen brightness can produce energy-savings.[20]

43.    The NRDC Report, applying the DOE's methodology, tested the energy usage of the LG television.  To observe the impact of the energy-saving features, the NRDC Report alternately tested LG's television with MDD enabled and disabled.  The results are reflected in the table below:[21]

---

[19] *Id.*
[20] *Id.* at 21.
[21] *Id.* at 13.

CLASS ACTION COMPLAINT



Figure I: LG model 58UF8300: Impact of MDD (Motion Eye Care) on on-mode power use

44.   Significantly, the average on-mode power with Motion Eye Care (MDD) on was 75 Watts, but elevated to 119 Watts, an increase of 58 percent, when the same test was conducted with Motion Eye Care turned off.[22]

45.   Even worse, the NRDC Report went on to discover that minor changes to the default settings disabled energy-saving features.  "LG TVs had a large selection of picture modes and used the unique term Auto Power Save (APS) to designate their default picture setting.  Selecting any other picture setting disabled both ABC (called Energy Saving) and MDD (called Motion Eye Care), if

---

[22] *Id.*

CLASS ACTION COMPLAINT

present." "[C]hoosing the setting called Standard also caused both energy-saving features to be disabled."[23]

46. LG failed to warn consumers that these minor screen adjustments disabled these energy-saving features:

> In addition, the user was neither notified of these changes nor given an adequate and effective on-screen warning that energy use would increase if he or she proceeded with the change to the picture mode setting.[24]

47. Notably, the "ENERGY STAR® Program Requirements for Televisions: Partner Commitments," which discusses the partnership guidelines of the ENERGY STAR® program, expressly requires participating partners to warn consumers when a change will disable energy-saving features:

> Preset Picture Setting Menu: For any product where consumers have the option of selecting different picture settings from a preset menu at any time:
>
> The product **shall display on-screen information that the Default** Picture **Setting reflects the** setting **under which the product qualifies for the ENERGY STAR**. For example, such information may be indicated by including an electronic ENERGY STAR mark alongside the name or description of that picture setting or in the form of a message displayed each time any setting other than the Default Picture Setting is selected.

(emphasis added).[25]

---

[23] *Id.*
[24] *Id.* at 19.
[25] *Available at*

CLASS ACTION COMPLAINT

48.    Furthermore, the NRDC Report results showed that the clip developed by the IEC and used by the DOE contained much shorter scenes and more frequent cuts between them than typical real-world content (*e.g.*, sports, dramas, and news programs).  Because the MDD dims the television screen with rapid scene changes, the MDD produced energy-savings with the DOE clip's short scenes that are simply not realized when real-world content is displayed.[26]

49.    The report goes on to state that LG appears to have deployed MDD features to "game" the IEC test clip:

> [I]t's conceivable that some manufacturers might be **exploiting the** abnormally **high frequency of scene changes in the IEC test clip to maximize the effect of MDD** and obtain a better energy efficiency score, thereby gaining a competitive advantage.

emphasis added).[27]

50.    Lastly, the NRDC Report further commented that playing movies in high dynamic range ("HDR") is likely to significantly increase future the energy use of televisions, which is similarly not reflected under DOE test conditions.  In

---

https://www.energystar.gov/sites/default/files/FINAL%20Version%207.0%20Television%20Program%20Requirements%20 (Dec-2014)_0.pdf (last visited Oct. 5, 2016)

[26] NRDC Report at 17.

[27] *Id.* at 6.

19

fact, energy use increased as much as 50 percent when HDR content was enabled on Ultra High Definition televisions.[28]

### E. Plaintiff's Experiences

51.    In 2016 Plaintiff purchased a 55" LG television.  The television was ENERGY STAR® certified through representations made on the box, as well as LG's website.[29]

52.    In deciding which television to purchase, Plaintiff observed prior to purchase that her Product was ENERGY STAR® certified – a representation Plaintiff relied on as a fair and accurate characterization of the energy usage of the television she purchased and understood to mean that the television was among the most energy efficient of televisions.  Plaintiff's purchase of the television included a substantial price premium due to LG's Misrepresentation that the television was among the most energy efficient of televisions.  Plaintiff changed the factory default picture settings on her television shortly after activating the television.  The changes included changes to the television's contrast, backlight, and picture settings.  Prior to adjusting these settings, Plaintiff was not warned that the changes would reduce energy efficiency, causing her to incur additional charges on her electricity bill.

---

[28] *Id.* at 7.
[29] http://www.lg.com/us/energy-star

CLASS ACTION COMPLAINT

53.    LG's Misrepresentation that Plaintiff's television was among the most energy efficient of televisions was an immediate cause of Plaintiff's decision to purchase its product.  She would not have agreed to purchase the television, or would have sought materially different terms, had she known that the Misrepresentation was false and misleading.

54.    LG's Misrepresentation that the television was among the most energy efficient on the market played a pivotal role, and was a substantial factor, in Plaintiff's decision to purchase the television.

55.    Plaintiff also understood that the purchase involved a direct transaction between herself and LG because the television came with packaging and other materials prepared by LG, including warranty materials referencing a manufacturer's warranty provided directly to the consumer, indicating she was purchasing warranty protection directly from LG as part of the transaction.

56.    LG failed to disclose to Plaintiff at the time of sale that it had installed a defeat device in the subject television, reduce the energy efficiency of the television.

## CLASS ACTION ALLEGATIONS

### A. The Class

57.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated.

CLASS ACTION COMPLAINT

58.    Plaintiff represents, and is a member of the following putative class (the "Class"):

> **All persons within the United States who purchased, within the relevant statute of limitations period, a LG television manufactured between 2011 and the present which features ABC (automatic brightness control, or "Energy Saving") and MDD (motion detection dimming, or "Motion Eye Care") technologies.**

59.    Plaintiff also seeks to represent the following proposed subclass (the "California Subclass"):

> **All persons residing in the state of California who purchased, within the relevant statute of limitations period, a LG television manufactured between 2011 and the present which features ABC (automatic brightness control, or "Energy Saving") and MDD (motion detection dimming, or "Motion Eye Care") technologies.**

60.    The definition of the putative class is narrowly tailored so as to include only identifiable members who purchased a LG model television within the limitations period, with specific technology.

**B. Numerosity**

61.    The proposed classes are so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the putative classes is presently unknown to

22

CLASS ACTION COMPLAINT

Plaintiff, but it is believed to include thousands of consumers in California and across the Country making joinder impracticable.

62.     The exact number and identities of the Class members are unknown at this time, and can only be ascertained through discovery.  Identification of Class members is a matter capable of ministerial determination from Defendant's records.

## C. Common Issues of Law and Fact

63.     There are questions of law and fact common to all Class Members that predominate over any questions affecting only individual members.   These questions include, but are not limited to:

> a.  Whether Defendant misrepresented its televisions as being the most energy efficient;
>
> b.  Whether Class Members suffered an ascertainable loss as a result of Defendant's Misrepresentation; and
>
> c.  Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief;

64.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that LG willfully or negligently, in breach of contract,

CLASS ACTION COMPLAINT

and applicable state or federal law, misrepresented the energy usage of their televisions, Plaintiff and Class members will have identical claims capable of being efficiently adjudicated and administered in this case. Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for herself and all other putative class members.

D. **Typicality**

65.    Plaintiff's claims are typical of the claims of Class members because Plaintiff and Class Members all purchased televisions bearing the same Misrepresentation. Plaintiff's claims are typical of the respective Subclass for the same reason.

E. **Protecting the Interest of Class Members**

66.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has an interest which might cause them not to vigorously pursue this action.

F. **Proceeding via Class Action is Superior and Advisable**

67.    A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

CLASS ACTION COMPLAINT

68.    Management of this class action is unlikely to present any difficulties.

69.    The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent and varying adjudications, leading to differentiating results and standards for Defendant.

70.    As a sensible matter, adjudications with respect to individual members of the class be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests.

## COUNT I
### Breach of Express Warranties

71.    Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

72.    In connection with the sale of the subject televisions, LG expressly warranted that, among other things, its televisions were fit for their intended purpose, and would function properly as energy efficient televisions within the parameters established by the ENERGY STAR® program, and the Misrepresentation.

73.    In reality, the televisions do not function properly as energy efficient televisions within the parameters established by the ENERGY STAR® program, and the Misrepresentation.

25

74. LG breached these express warranties in that common, ordinary, changes to the televisions' brightness, contrast, and picture settings increase energy usage, causing Plaintiff and Class Members to incur increased cots on their electricity bills.

75. Plaintiff and Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class Members have paid and will continue to pay higher energy bills for as long as they continue to use the televisions.

76. As a result of breach of express warranties, Plaintiff and Class Members have been damaged.

## COUNT II
### Breach of Implied Warranty of Merchantability

77. Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

78. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that its televisions were fit for their intended purpose in that they would function properly as energy efficient televisions within the

26

parameters established by the ENERGY STAR® program, and the Misrepresentation.

79.    Defendant breached the warranty implied in the contract for the sale of the Products in that the Products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose in that they did not function properly as energy efficient televisions within the parameters established by the ENERGY STAR® program, and the Misrepresentation.  As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

80.    Plaintiff and Class Members are the intended beneficiaries of Defendant's implied warranties.

81.    In reliance upon Defendant's skill and judgment and the implied warranties, Plaintiff and Class Members purchased the Products for use as energy efficient televisions within the parameters established by the ENERGY STAR® program, and the Misrepresentation.

82.    The televisions were not altered by Plaintiff and Class Members.  Any changes to picture settings made by Class Members constituted expected and ordinary use of a television.

CLASS ACTION COMPLAINT

83.    The televisions were defective when they left the exclusive control of Defendant.  The built-in firmware process by which the efficiency of the television was disabled and the benefits lost to the consumer upon making use of image controls constitutes a defect.

84.    Defendant knew the televisions would be purchased and used without additional testing for energy efficiency by Plaintiff and Class Members.    The televisions were defectively designed and unfit for their intended purpose, and Plaintiff and Class Members did not receive the goods as warranted.

85.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class Members have paid and will continue to pay higher energy bills for as long as they continue to use the televisions.

## COUNT III
### For Violations of California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq.*

86.    Plaintiff, individually, and on behalf of the members of the California Subclass, repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

28

CLASS ACTION COMPLAINT

87.     Defendant is subject to the UCL.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . ."[30]

88.     Defendant's conduct, described herein, violated the "unlawful" prong of the UCL by violating the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

89.     Defendant's conduct, described herein, violated the "unfair" prong of the UCL by misrepresenting the Products as being among the most energy efficient of televisions, and by programming a firmware bypass that silently disables key energy-saving features.

---

[30] Cal. Bus. & Prof. Code § 17200 *et seq.*

29

90.    Plaintiff and the California Subclass Members suffered lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class Members have paid and will continue to pay higher energy bills for as long as they continue to use the Products.

## <u>COUNT IV</u>
### False Advertising Law ("FAL")
### Business & Professions Code § 17500, *et seq.*

91.    Plaintiff, individually, and on behalf of the members of the California Subclass, repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

92.    California's False Advertising Law (*Bus. & Prof. Code* § 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

CLASS ACTION COMPLAINT

93.   Defendant committed acts of false advertising, as defined by §17500, by using false and misleading statements to promote the sale of Products, as described above.

94.   Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

95.   Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

96.   Plaintiff, and the California Subclass Members suffered lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class members have paid and will continue to pay higher energy bills for as long as they continue to use the Products.

## COUNT V
### Breach of Contract

97.   Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

98.   Every purchase of a subject television from an authorized dealer of LG constitutes a contract between LG and the purchaser.

31

99.   LG materially breached these contracts by selling to Plaintiff and Class Members non-compliant, non-energy efficient televisions and failing to disclosure the pre-installed software designed to reduce the energy efficiency of subject televisions when changes to default settings are made.  As a result, said televisions are substantially less valuable than televisions LG advertised and promised to deliver to Plaintiff and Class Members.

100.   LG's misrepresentations and omissions contained in the body of this Complaint, including LG's misrepresentation of the energy efficient capability of its subject televisions, caused Plaintiff and Class Members to enter into their agreements to purchase the subject televisions.  Absent those misrepresentations and omissions, Plaintiff and Class Members would not have purchased their televisions, would not have purchased their televisions at the price they paid, and/or would have purchased alternative televisions that did not contained pre-installed software designed to increase the energy output of the televisions. Accordingly, Plaintiff and Class Members suffered injury, as they overpaid for their subject televisions and did not receive the benefit of their bargain.

101.   As a direct and proximate result of LG's breach, Plaintiff and Class Members have been damaged.

CLASS ACTION COMPLAINT

## COUNT VI
**Unjust Enrichment**

102.   Plaintiff brings this claim individually, on behalf of Members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this and incorporates them herein by reference.

103.   LG has received and retained unjust benefits from Plaintiff and Class Members, and inequity has resulted.

104.   LG misrepresented that its televisions were among the most energy efficient available for the purpose of generating retails sales which could and did increase the amount of direct and wholesale sales to LG.

105.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of its televisions.  Retention under these circumstances is unjust and inequitable because LG misrepresented that the televisions were among the most energy efficient of televisions on the market, which caused injuries to Plaintiff and Class Members because (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class Members have paid and will continue to pay higher energy bills for as long as they continue to use the Products.

106.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

## COUNT VII
### Breach of Obligation of Good Faith and Fair Dealing

107.    Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

108. LG breached its obligation of good faith and fair dealing by intentionally designing subject televisions to draw less power during DOE testing, thereby fraudulently representing the true nature of the television's energy usage, leading to improper ENERGY STAR® certification.

## COUNT VIII
### Fraudulent Inducement

109.    Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

CLASS ACTION COMPLAINT

110.  To induce Plaintiff and Class Members to purchase the subject televisions, LG made representations as to the subject television's energy saving capabilities.

111.  Among the representations LG made to Plaintiff and Class Members was that they could "enjoy a crystal-clear picture while saving energy with technology that intelligently adapts the screen's brightness to the intensity of the light in the room.

112.  Moreover, LG represented the subject televisions as ENERGY STAR® certified, without warning Plaintiff and Class Members that changes to the television's default settings would affect the nature of the subject TVs energy saving capabilities.

113.  Thereafter, Plaintiff and Class Members discovered that, unbeknownst to them, LG fraudulently installed software in each subject television, which altered the subject television's actual level of energy usage.

114.  As a result of LG's fraudulent inducement, Plaintiff and Class Members have been injured.

**COUNT IX**
**Intentional Misrepresentation**

115.  Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

35

116. Defendant willfully, falsely, and knowingly misrepresented that its televisions were among the most energy efficient of televisions. The Misrepresentation was communicated through the ENERGYGUIDE labels Defendant affixed to each television, as well as ENERGY STAR® logo that Defendant associated, in numerous ways, with its products.

117. In actual and reasonable reliance upon the Misrepresentation, Plaintiff and Class Members purchased the televisions for their intended and reasonably foreseeable purposes. Plaintiff and Class Members were unaware of the true facts concerning Defendant's Misrepresentation of the televisions, which Defendant suppressed and failed to disclose. Defendant's Misrepresentation was material, in that if Plaintiff and Class Members had been aware of the suppressed facts, Plaintiff and Class Members would not have purchased the televisions for the same price.

118. Plaintiff and Class Members are informed and believe, and thereon allege, that Defendant misrepresented that the televisions were among the most energy efficient of televisions with the intent to defraud Plaintiff and Class Members. Plaintiff and Class Members were unaware of Defendant's intent and relied upon the Defendant's Misrepresentation in deciding to purchase the televisions.

CLASS ACTION COMPLAINT

119.  Plaintiff and Class Members' reliance upon Defendant's Misrepresentation was reasonable.  The defect (excess energy consumption) is latent and not something that Plaintiff or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible for individual consumers to conduct their own energy efficiency testing prior to purchase.

120.  In actual and reasonable reliance upon the Misrepresentation, Plaintiff and Class Members purchased the televisions and experienced energy usage far above the levels represented, the direct and proximate result of which was injury and harm to Plaintiff and Class Members because: (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class Members have paid and will continue to pay higher energy bills for as long as they continue to use the televisions.

121.  All acts of LG complained of herein were committed with malice, intent, wantonness, and recklessness, and overall were egregious in nature, and as such, Plaintiff and Class Members are entitled to punitive damages.

## COUNT X
### Negligent Misrepresentation

37

122.   Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

123.   Defendant represented that the Products were among the most energy efficient of televisions.   To communicate this representation and to convince Plaintiff and Class Members to purchase a Product, Defendant supplied Plaintiff and Class Members with information, namely the ENERGYGUIDE label and the ENERGY STAR® logo.   Defendant knew, or should have known, that this information was false and/or misleading to Plaintiff and Class Members.

124.   The Misrepresentation concerned material facts that influenced Plaintiff and Class Members' purchase of the Products.

125.   Defendant knowingly made the Misrepresentation with the intent to induce Plaintiff and Class Members to act upon it by purchasing the Products.

126.   At the time Defendant made the Misrepresentation, Defendant knew or should have known that the Misrepresentation was false or Defendant made the Misrepresentation without knowledge of its truth or veracity.

127.   Plaintiff and Class Members reasonably, justifiably, and detrimentally relied on Misrepresentation and, as a proximate result thereof, have and will continue to suffer damages in the form of lost money from the purchase price and increased energy costs over the life of the Products.

128.   Plaintiff and Class Members suffered a loss of money as a result of Defendant's false information because: (a) they would not have purchased the televisions on the same terms if the true facts concerning the Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) they have paid and will continue to pay higher energy bills for as long as they continue to use the televisions.

## COUNT XI
### Fraudulent Concealment/Nondisclosure

129.   Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

130.   Defendant knew at the time of sale that it had falsely represented the Products as being among the most energy efficient of televisions because Defendant itself deployed a firmware bypass that silently disabled key energy-saving features of its products.

131.   Defendant fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class the true energy consumption of the televisions with the energy-saving features disabled.

132.   Defendant had exclusive knowledge of Misrepresentation's falsity at the time of sale.   The defect (excess energy consumption) is latent and not something that Plaintiff or Class Members, in the exercise of reasonable diligence,

CLASS ACTION COMPLAINT

could have discovered independently prior to purchase, because it is not feasible for individual consumers to conduct their own energy efficiency testing prior to purchase. The defect would not be disclosed by careful, reasonable inspection by the purchaser.

133. Defendant had the capacity to, and did, deceive Plaintiff and Class Members into believing that the products they were purchasing were among the most energy efficient of televisions.

134. Defendant undertook active and ongoing steps to conceal the defect. Plaintiff is aware of nothing in Defendant's advertising, publicity, or marketing materials that discloses the truth about the defect, despite Defendant's awareness of the problem.

135. The facts concealed and/or not disclosed by Defendant to Plaintiff and the Class are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) a television.

136. Defendant had a duty to disclose an accurate estimate of the energy consumption of the televisions at the time of sale, including on the ENERGYGUIDE label required by federal law.

CLASS ACTION COMPLAINT

137. Defendant intentionally concealed and/or failed to disclose an accurate estimate of the energy consumption of the televisions for the purpose of inducing Plaintiff and the Class to act thereon.

138. Plaintiff and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the televisions.

139. Plaintiff and Class Members suffered a loss of money as a result of Defendant's fraudulent conduct because: (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class members have paid and will continue to pay higher energy bills for as long as they continue to use the televisions.

## COUNT XII
### Common Law Fraud

140. Plaintiff brings this claim individually, on behalf of members of the Class and California Subclass, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

141. As detailed at length above, Defendant provided Plaintiff and Class Members with false or misleading material information and failed to disclose

material facts about its televisions, including but not limited to the fact that the televisions were not among the most efficient available on the market.

142.   The Misrepresentation made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, was intended to induce and actually incused Plaintiff and Class Members to purchase its televisions.

143.   The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

144.   Plaintiff, and Class Members suffered a loss of money as a result of Defendant's fraudulent conduct because: (a) they would not have purchased the televisions on the same terms if the truth concerning Defendant's Misrepresentation had been known; (b) they paid a price premium due to the Misrepresentation; (c) the televisions did not perform as promised; and (d) Plaintiff and Class Members have paid and will continue to pay higher energy bills for as long as they continue to use the televisions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

      1. For an order certifying this action and/or common issues raised herein as a Class Action under the appropriate Federal Rule of

CLASS ACTION COMPLAINT

Civil Procedure 23(a), 23(b), and 23(c); further designating a Class Representative, appointing the undersigned as class counsel;

2. For an Order certifying the nationwide Class and Subclass under Fed R. Civ. P. 23;

3. For an Order declaring Defendant's conduct in violation of the statutes referenced herein;

4. An order forbidding LG from destroying or removing any computer or similar records with evidence related to LG's sales records, or this action;

5. An order requiring complete and immediate disclosure of all studies, reports, analyses, data, compilations, and other similar information within the possession, custody, or control of LG, concerning, relating to, or involving energy usage of subject televisions;

6. An order preventing LG from attempting, by any means, on its own or through its agents, to persuade any putative Class Members to sign any documents which in any way release any of the claims of any Putative Class Members;

7. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

43

8.  For prejudgment interest on all amounts awarded;

9.   For injunctive relief as pleaded or as the Court may deem proper;

10. For an Order awarding Plaintiff, the Class, and the California Subclass their reasonable attorneys' fees and expenses and costs of suit;

11. For an Order finding in favor of Plaintiff and the California Subclass; and;

12. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 7, 2017

Respectfully Submitted,

**LEMBERG LAW, LLC**

By:  */s/ Trinette G. Kent*

Trinette G. Kent, Esq.
tkent@lemberglaw.com
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
*Attorneys for Plaintiff*

**WOLF HALDENSTEIN ADLER FREEMAN & HERTZ LLP**

Betsy C. Manifold, Esq.
manifold@whafh.com
Rachele R. Rickert, Esq.
rickert@whafh.com
Brittany N. DeJong, Esq.
dejong@whafh.com

44

750 B Street, Suite 2770
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile:  (619) 234-4599

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERTZ LLP**
Thomas H. Burt, Esq.
burt@whafh.com
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile:  (212) 545-4653

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERTZ LLC**
Theodore B. Bell, Esq.
tbell@whafh.com
Carl Malmstrom, Esq.
malmstrom@whafh.com
70 W. Madison St., Suite 1400,
Chicago, IL 60602
Telephone: (312) 984-0000
Facsimile:  (312) 212-4401

**TOSTRUD LAW GROUP, PC**
Jon Tostrud, Esq.
jtostrud@tostrudlaw.com
1925 Century Park East
Suite 2125
Los Angeles, CA 9006
Telephone: (310) 278-2600
Facsimile:  (310) 278-2640

**BURSOR & FISHER, P.A.**
Scott A. Bursor, Esq.
scott@bursor.com
Tim Fisher
ltfisher@bursor.com
888 Seventh Avenue

45

CLASS ACTION COMPLAINT

New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163

*Counsel for Plaintiffs and the
[Proposed]Class*

CLASS ACTION COMPLAINT