JOHN NADOLENCO (SBN 181128)
  *jnadolenco@mayerbrown.com*
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone:     (213) 229-9500
Facsimile:     (213) 625-0248

ARCHIS A. PARASHARAMI (*pro hac vice* to be filed)
  *aparasharami@mayerbrown.com*
DANIEL E. JONES (*pro hac vice* to be filed)
  *djones@mayerbrown.com*
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VERONICA MUNOZ, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>Defendant. | Case No. 5:17-cv-01176-BLF<br><br>**DEFENDANT LG ELECTRONICS U.S.A., INC.'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge Beth Labson Freeman<br><br>Hearing:   September 28, 2017<br>Time:      9:00 a.m.<br><br>[*Concurrently filed with [Proposed] Order*] |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................... 2

BACKGROUND ............................................................................................................. 2

    A.    Statutory And Regulatory Framework. ......................................................... 2

    B.    The NRDC Report. ........................................................................................ 4

    C.    Munoz's Allegations. ..................................................................................... 5

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT ................................................................................................................... 7

I.      MUNOZ LACKS STANDING TO SUE LG. .................................................. 8

II.     MUNOZ'S CLAIMS ARE PREEMPTED BY THE EPCA. ........................... 9

    A.    Munoz's Claims Are Expressly Preempted. ................................................. 9

          1.    Munoz's Energy Guide Claims Are Expressly Preempted by Section 6297(a)(1)(B). ............................................................... 9

          2.    Munoz's Energy Guide And Energy Star Claims Are Expressly Preempted by Section 6297(g). ....................................................... 11

    B.    Munoz's Energy Guide And Energy Star Claims Are Conflict Preempted ........ 14

III.    THIS CASE SHOULD BE DISMISSED OR, ALTERNATIVELY, STAYED UNDER THE PRIMARY JURISDICTION DOCTRINE. ............................... 17

IV.    EVEN ASSUMING THAT MUNOZ'S CLAIMS ARE NOT PREEMPTED, THE COMPLAINT FAILS TO STATE A CLAIM. ............................................... 19

    A.    This Court Should Follow *Schwartz* And Dismiss The Complaint For Failure To State A Claim. ............................................................................ 19

          1.    Munoz's Express Warranty Claim Fails Because Neither The Energy Guide Label Nor Energy Star Logo Constitutes An Express Warranty By LG. ...................................................................... 20

          2.    Munoz Cannot State A Claim For Breach Of The Implied Warranty Of Merchantability Because She Does Not Allege That Her LG Television Was Not Fit For Its Ordinary Purpose. .................... 21

          3.    Munoz Cannot Maintain Her Fraud Claims For Two Independent Reasons. ....................................................................................... 22

              a.    Munoz's Fraud Claims Fail Because She Does Not Allege a Fraudulent Statement. ............................................... 22

              b.    Munoz Also Fails To Plead Her Fraud Claims With The Particularity Required By Rule 9(b). .............................. 22

    B.    Munoz's Remaining Claims Also Fail For Independent Reasons. .................... 23

          1.    Munoz's Warranty Claims Should Be Dismissed For Failure to Allege Pre-Suit Notice. ............................................................... 23

          2.    Munoz Has Failed To Allege That LG Had A Duty To Disclose. .......... 24

          3.    Munoz Has Not Alleged A Contract With LG. ...................................... 24

i

# TABLE OF CONTENTS
## (continued)

**Page(s)**

    4.    Munoz's Unjust Enrichment Claim Should Be Dismissed Because Some California Courts Do Not Recognize That As A Cause Of Action......................................................................................... 25

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Conditioning & Refrigeration Institute v. Energy Resources Conservation & Development Comm'n,*
410 F.3d 492 (9th Cir. 2005) ........................................................................................................10, 11

*Arizona v. United States,*
132 S. Ct. 2492 (2012)....................................................................................................9, 14, 15, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................................................6, 7

*Astiana v. Hain Celestial Group, Inc.,*
783 F.3d 753 (9th Cir. 2015) ......................................................................................................18, 19

*Avila v. Redwood Hill Farm & Creamery, Inc.,*
2014 WL 2090045 (N.D. Cal. May 19, 2014) ..........................................................................19

*Avram v. Samsung Electronics America, Inc.,*
2013 WL 3654090 (D.N.J. July 11, 2013)..................................................................................13

*Azoulai v. BMW of N. Am. LLC,*
2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ..........................................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................................................6

*Bernardi v. JPMorgan Chase Bank, N.A.,*
2012 WL 2343679 (N.D. Cal. June 20, 2012) ..........................................................................25

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009) ..............................................................................................................21

*Buckman Co. v. Plaintiffs' Legal Comm.,*
531 U.S. 341 (2001)..............................................................................................................................15

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) ......................................................................................................23

*Cipollone v. Liggett Grp., Inc.,*
505 U.S. 504 (1992)..............................................................................................................................9

*Clark v. Time Warner Cable,*
523 F.3d 1110 (9th Cir. 2008) ......................................................................................................17

*Corwin v. Conn. Valley Arms, Inc.,*
74 F. Supp. 3d 883 (N.D. Ill. 2014) ............................................................................................20

*Cox v. Old Republic Nat'l Title Ins. Co.,*
2016 WL 301974 (N.D. Cal. Jan. 25, 2016)..........................................................................25

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000)..............................................................................................................................9

*Davel Commc'ns, Inc. v. Qwest Corp.,*
460 F.3d 1075 (9th Cir. 2006) ......................................................................................................17

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Dzielak v. Whirlpool Corp.*,
120 F. Supp. 3d 409 (D.N.J. 2015) .................................................................16, 17

*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) .......................................................................23

*Gee v. Viking Range Corp.*,
2008 WL 4416442 (N.D. Miss. Sept. 24, 2008) .............................................12, 13

*Geier v. American Honda Motor Co.*,
529 U.S. 861 (2000).................................................................................15, 16

*Gitson v. Clover Stornetta Farms*,
2014 WL 2638203 (N.D. Cal. June 9, 2014) .......................................................19

*Graham v. Bank of Am., N.A.*,
226 Cal. App.4th 594 (2014) .......................................................................22

*Ham v. Hain Celestial Group, Inc.*,
70 F. Supp. 3d 1188 (C.D. Cal. 2014) ...............................................................24

*Jurgensen v. Felix Storch, Inc.*,
2012 WL 2354247 (S.D.N.Y. June 14, 2012) ...........................................12, 13, 24

*Kane v. Chobani, LLC*,
645 F. App'x 593 (9th Cir. 2016) .....................................................................19

*Keenan v. Shinseki*,
2012 WL 6628923 (E.D. Cal. Dec. 19, 2012) ....................................................23

*Keith v. Buchanan*,
173 Cal. App. 3d 13 (1985) .............................................................................20

*In re Kind LLC "Healthy and All Natural" Litig.*,
209 F. Supp. 3d 689 (S.D.N.Y. 2016).........................................................13, 19

*Lazar v. Superior Court*,
909 P.2d 981 (Cal. 1996) ................................................................................22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..........................................................................................8

*Machlan v. Procter & Gamble Co.*,
77 F. Supp. 3d 954 (N.D. Cal. 2015) ..................................................................7

*Maynard v. Wells Fargo Bank, N.A.*,
2013 WL 4883202 (S.D. Cal. Sept. 11, 2013).....................................................24

*McDonnell Douglas Corp. v. Thiokol Corp.*,
124 F.3d 1173 (9th Cir. 1997) ..........................................................................20

*Medtronic Inc. v. Lohr*,
518 U.S. 470 (1996)......................................................................................9, 11

*Mocek v. Alfa Leisure, Inc.*,
114 Cal. App.4th 402 (2003) ...........................................................................21

iv

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Mohebbi v. Khazen*,
  50 F. Supp. 3d 1234 (N.D. Cal. 2014) ........................................................25

*Mut. Pharm. Co. v. Bartlett*,
  133 S. Ct. 2466 (2013) ...............................................................................17

*Orichian v. BMW of N. Am., LLC*,
  226 Cal. App. 4th 1322 (2014) ...................................................................24

*Park-Kim v. Daikin Indus., Ltd.*,
  2016 WL 5958251 (C.D. Cal. Aug. 3, 2016) ..............................................24

*Pharm. Research & Mfrs. of Am. v. Walsh*,
  538 U.S. 644 (2003) ....................................................................................17

*R Power Biofuels, LLC v. Chemex LLC*,
  2017 WL 1164296 (N.D. Cal. Mar. 29, 2017) ............................................22

*Rhoades v. Avon Prods., Inc.*,
  504 F.3d 115 (9th Cir. 2007) ......................................................................19

*Riegel v. Medtronic, Inc.*,
  552 U.S. 312 (2008) ......................................................................................9

*In re Rigel Pharm., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ......................................................................23

*Rossi v. Whirlpool Corp.*,
  2013 WL 5781673 (E.D. Cal. Oct. 25, 2013) .............................................21

*Saubers v. Kashi Co.*,
  39 F. Supp. 3d 1108 (S.D. Cal. 2014) ...................................................18, 19

*Schwartz v. Vizio, Inc.*,
  2017 WL 2335364 (C.D. Cal. May 23, 2017) ..................................... *passim*

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..............................................................................7, 8

*Swearingen v. Late July Snacks LLC*,
  2014 WL 2215878 (N.D. Cal. May 29, 2014) ............................................19

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
  83 F. Supp. 3d 855 (N.D. Cal. 2015) ..........................................................24

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  2014 WL 1048710 (N.D. Cal. Mar. 14, 2014) ............................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................................4, 7

*Tomek v. Apple Inc.*,
  636 F. App'x 712 (9th Cir. 2016) ...............................................................23

*United States v. Gen. Dynamics Corp.*,
  828 F.2d 1356 (9th Cir. 1987) ....................................................................18

v

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ...................................................................................9

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................23

**Statutes, Rules and Regulations**

10 C.F.R. § 430, subpt. B, app. H ...............................................................................3, 4

16 C.F.R.
   § 305.17 .................................................................................................................2, 11
   § 305.17(f)(4) .............................................................................................................3
   § 3015.17(f)(5) ...........................................................................................................3

76 Fed. Reg. 1038 (Jan. 6, 2011) ...................................................................................14

81 Fed. Reg. 41,262 (June 24, 2016) ..............................................................................18

42 U.S.C.
   § 6201 .........................................................................................................................1
   § 6292(a)(12) ..............................................................................................................3
   § 6294(a)(1) ................................................................................................................3
   § 6294(a)(2)(I)(i)(I) ....................................................................................................9
   § 6294(a)(2)(I)(iii)(II) ................................................................................................9
   § 6294a(a) ...................................................................................................................3
   § 6294(c)(2)-(3) ..........................................................................................................3
   § 6294(c)(3) ...............................................................................................................14
   § 6294(c)(4) ...............................................................................................................12
   § 6294(c)(4)-(5) ..........................................................................................................3
   § 6297(a)(1)(B) ...........................................................................................7, 9, 10, 11
   § 6297(a)(2)(A) ..........................................................................................................9
   § 6297(g) ..................................................................................................7, 11, 12, 13

Cal. Bus. & Prof. Code § 17200 .......................................................................................6

Cal. Bus. & Prof. Code § 17500 .......................................................................................6

Cal. Com. Code § 2314(2)(c) ..........................................................................................21

**Other Authorities**

S. Rep. No. 94-516 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1956 ...............................11

*Webster's II New Riverside University Dictionary* 1190 (1988) ...................................21

vi

## NOTICE OF MOTION & MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT at 9:00 a.m. on September 28, 2017, or as soon thereafter as this may be heard, before the Honorable Judge Beth Labson Freeman in Courtroom 3 of this Court, located at 280 South 1st Street, San Jose, California, defendant LG Electronics U.S.A., Inc. ("LG"), will and hereby does move the Court for an order dismissing the complaint and each claim therein filed by plaintiff Veronica Munoz.

The motion to dismiss is made pursuant to the Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) and is based on the grounds that Munoz lacks Article III standing; Munoz's claims are expressly and impliedly preempted by the Energy Policy and Conservation Act; the primary jurisdiction doctrine warrants dismissal; and Munoz has failed to state a claim under each of her twelve causes of action.

This motion is made based on the above Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the pleadings and documents on file in this case, and any other arguments that may be raised at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Veronica Munoz's lawsuit is a thinly-veiled attack on the federal government's long-established energy usage standards.  While Munoz's lawsuit rests on the fact that defendant LG Electronics U.S.A., Inc. ("LG") uses mandatory Energy Guide labels and participates in the Energy Star program, she does not (and cannot) deny that LG has complied with the energy usage standards the government has adopted. Instead, borrowing from a recent report by the Natural Resources Defense Council ("NRDC"), she challenges the federal standards themselves. But the wisdom of those government testing protocols is not the proper subject of this litigation. Whatever the merits of the NRDC's attack on those standards, Munoz's own lawsuit against LG for complying with those standards is fatally flawed and should be dismissed.

The government programs at issue—Energy Guide and Energy Star—were adopted under the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201 *et seq.*, which calls for the government to encourage manufacturers to produce, and consumers to purchase, energy efficient products, such as televisions. Energy Guide is the familiar yellow label—which the government requires manufacturers to provide—that displays a product's estimated annual energy cost. Another program is Energy Star, which is a partnership between manufacturers and federal regulators. If a manufacturer satisfies the federal government's eligibility criteria for the Energy Star program, the manufacturer may place an Energy Star logo on its product. The federal government uses the same testing method to determine energy usage for both the Energy Guide and Energy Star Programs.

That LG complies with the standards for Energy Guide and Energy Star—something that the complaint does not even hint at denying—should end the matter.  But Munoz clings to a recent NRDC report that criticizes the federal government's testing method. Regardless of that debate, the NRDC does not dispute that television manufacturers like LG measure the energy usage of their products in accordance with the federal government's method, as required under federal law. And for that reason, the NRDC did not conclude that the conduct of any television manufacturer, including LG, violates the rules governing the Energy Guide or Energy Star

1

programs. Instead, the NRDC encouraged the government to revise its testing requirements.

Nonetheless,  Munoz—who claims to have purchased an LG television in 2016—brings this suit on the back of the NRDC report, alleging a litany of state-law warranty and fraud claims. In other words, she seeks to capitalize on a consumer report that advocates for the *government* to change its *federal* energy guidelines by bringing a *state*-law case against a *manufacturer*. LG is not the sole manufacturer against which Munoz's counsel have tried this approach. The same counsel have also brought separate lawsuits against Vizio and Samsung, alleging the same type of claims based on alleged misrepresentations conveyed by the Energy Guide labels and Energy Star logos on those manufacturers' televisions. In one of those lawsuits, *Schwartz v. Vizio, Inc.*, --- F. Supp. 3d ---, 2017 WL 2335364 (C.D. Cal. May 23, 2017), Judge Selna recently dismissed the case, finding that all of the plaintiffs' claims based on the Energy Guide label were expressly preempted by EPCA and that, even for those claims that were not preempted, the complaint failed to state a claim.

The claims in this lawsuit should meet the same fate.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Munoz has standing to pursue her claims against LG?

2.     Whether Munoz's claims are preempted by the EPCA?

3.     Whether the primary jurisdiction doctrine requires dismissal or a stay of proceedings?

4.     Whether Munoz has failed to state a claim?

## BACKGROUND

Before delving into Munoz's allegations, a brief overview of the Energy Guide and Energy Star programs is helpful. Both programs are administered pursuant to the federal EPCA, and both test the energy use of a television based on the television's "Default Picture Setting." Compl. ¶ 39.

### A.     Statutory And Regulatory Framework.

*Energy Guide.* The Federal Trade Commission ("FTC") requires that televisions manufactured after May 10, 2011 display Energy Guide labels. Compl. ¶ 22; *see also* 16 C.F.R.

§ 305.17 (FTC regulations); 42 U.S.C. §§ 6292(a)(12), 6294(a)(1). The Energy Guide label must display the particular television model's estimated annual energy cost and energy consumption based on a usage rate of five hours in "on mode" and nineteen hours in "standby (sleep) mode per day." 16 C.F.R. § 305.17(f)(4). The Energy Guide label must also show how the model's estimated annual energy cost compares to "applicable ranges" of other similarly sized televisions. *Id.* § 3015.17(f)(5); *see also* Compl. ¶ 25 (visual depiction of cost range on Energy Guide label). In addition, the government-designed Energy Guide label contains an express disclaimer about the variability of energy costs: "[y]our cost depends on your utility rates and use." Compl. ¶ 25.

***Energy Star.*** Energy Star is a program jointly administered by the Department of Energy ("DoE") and the Environmental Protection Agency ("EPA") that "identif[ies] and promote[s] energy-efficient products and buildings in order to reduce energy consumption, improve energy security, and reduce pollution through voluntary labeling of . . . products and buildings that meet the highest energy conservation standards." 42 U.S.C. § 6294a(a). As part of the Energy Star program, DoE and EPA "work to enhance public awareness of the Energy Star label" and to "preserve the integrity of the Energy Star label." 42 U.S.C. § 6294a(c)(2)-(3). DoE and EPA are also tasked with "regularly updat[ing] Energy Star product criteria" and "solicit[ing] comments from interested parties prior to establishing or revising an Energy Star product category, specification, or criterion." *Id.* § 6294a(c)(4)-(5). Manufacturers like LG routinely participate in the Energy Star program and, if their products satisfy the Energy Star criteria for energy efficiency, they are authorized to affix the "widely recognized" Energy Star logo to their products. Compl. ¶ 29; *see also* Compl. ¶ 30 (visual depiction of logo).

In assessing both the information to include on the Energy Guide labels *and* whether a product satisfies Energy Star's requirements, the DoE "measures the energy use of new television models while playing a 10-minute video of assorted content developed by the International Electrotechnical Commission ('IEC') standards organization." Compl. ¶ 39. These standards require that "[t]he testing [be] conducted with the default picture settings activated," that is, the out of the box settings. *Id.*; *see also* 10 C.F.R. pt. 430, subpt. B, app. H (DoE test

methods for measuring the power consumption of televisions). In other words, both programs test a television under the same condition—its Default Picture Setting. *Id.* All of the LG televisions at issue here contain Energy Guide labels—per the FTC's regulations—and bear Energy Star logos. Compl. ¶ 10.

**B.      The NRDC Report.**

Munoz's case is premised on a report published by the NRDC. Compl. ¶ 9 (citing the NRDC Report, https://goo.gl/5cEENz (attached as Exhibit A to LG's Request for Judicial Notice ("RJN"))); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (documents incorporated by reference into a complaint may be considered at the motion-to-dismiss stage).

But that reliance renders Munoz's claim fundamentally flawed from the start: The NRDC Report did *not* label Defendant's actions "illegal" or say they violate the Energy Guide labeling requirement or the Energy Star program. NRDC Report at 5. Rather, the NRDC Report was based on a novel testing method that differs significantly from the DoE's test for energy consumption—the test that manufacturers like LG must follow under federal law. NRDC Report at 12-15. Based on the results from this distinct test for energy consumption, the NRDC Report made recommendations about how the DoE and EPA should modify the Energy Guide and Energy Star programs to encourage even greater energy efficiency. NRDC Report at 27-28.

There are two key differences between the DoE's and NRDC's testing protocols. First, the NRDC's protocol—unlike the federal testing requirements—modified the settings of the televisions by turning off certain energy-saving features. One feature is "MDD, referred to as 'Motion Eye Care' by LG, [which] decreases the brightness of the television screen when rapid scene changes occur." Compl. ¶ 41. Rapid and frequent scene changes typically occur during commercials and music videos. NRDC Report at 6. The other feature is "ABC, referred to as 'Energy Saving' by LG, [which] decreases television screen brightness based upon the amount of ambient light detected. When ambient light decreases, the ABC decreases the screen brightness." Compl. ¶ 42.

And second, the NRDC Report was based, in part, on what it called a "12-minute test

4

loop of real-world content," NRDC Report at 15, rather than the 10-minute video used by the DoE in administering the Energy Guide and Energy Star programs. Compl. ¶ 39. The NRDC developed this novel test clip because it believed this clip "represent[ed] a cross-section of commonly viewed types of video material." NRDC Report at 15.

Rather than accusing LG (or any other manufacturer) of illegal or tortious conduct or violating the Energy Star program, the NRDC Report "encouraged the DOE to work with the EPA to update the test method" and "develop a more sophisticated enforcement scheme that utilizes multiple versions of the official test loop during verification testing." NRDC Report at 27, 28. In accordance with this recommendation, the NRDC Report noted that "[i]n August 2016, the EPA launched its process to revise its ENERGY STAR specification and intends to produce Version 8.0 that is meant to address many of the issues raised in this report." NRDC Report at 8.

The NRDC Report further stated that, after meeting "with some of the leading [television] manufacturers," "*LG* has been the ***most*** proactive and responsive in developing software improvements that address our concerns." NRDC Report at 27 (emphases added); *see also* NRDC Report at 6 ("Thus far, LG has been the most responsive to our concerns."); NRDC Report at 8 ("NRDC met with LG, Samsung, and Vizio to discuss our findings . . . . To date, LG has been the most responsive, and its proposed solution will address many of our concerns.").

### C.   Munoz's Allegations.

Munoz purchased a 55" LG television in 2016 that contained an Energy Star logo on the box. Compl. ¶ 51. The complaint alleges that, although LG's televisions comply with their Energy Guide labels and Energy Star logos when operated in their default mode, if a user "disable[s] key energy-saving features" "the expected energy cost to operate [Defendant's] televisions" increases. Compl. ¶ 4 (citing NRDC report). Munoz further alleges that "LG failed to warn consumers that . . . minor screen adjustments disabled [the MDD and ABC] energy-saving features." Compl. ¶ 46. In addition, she alleges that the Energy Star program "requires participating partners to warn consumers when a change will disable energy-saving features," such as "by including an electronic ENERGY STAR mark alongside the name or description" of the "Default Picture Setting [that] reflects the setting under which the product qualifies for the

ENERGY STAR." Compl. ¶ 47 (emphasis omitted).

Tellingly, Munoz does not allege that LG failed to comply with this standard (because in fact LG does).[1] Instead, she broadly alleges that LG misrepresented that its televisions "are among the most energy efficient of televisions." Compl. ¶ 6. More specifically, Plaintiff alleges that "LG communicates [a] Misrepresentation through (a) the ENERGYGUIDE labels affixed to its televisions, and (b) ENERGY STAR® logos, which indicate that the televisions meet the ENERGY STAR® standards for energy efficiency." Compl. ¶ 20. Based on the alleged misrepresentation that she says is conveyed by the Energy Guide label and the Energy Star logo,[2] Munoz asserts claims for breach of express warranties (Count I); breach of implied warranty of merchantability (Count II); violation of California's Unfair Competition law, Cal. Bus. & Prof. Code § 17200 (Count III); violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 (Count IV); breach of contract (Count V); unjust enrichment (Count VI); breach of obligation of good faith and fair dealing (Count VII); fraudulent inducement (Count VIII); intentional misrepresentation (Count IX); negligent misrepresentation (Count X); fraudulent concealment/nondisclosure (Count XI); and common law fraud (Count XII). Compl. ¶¶ 71-144.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

---

[1] Although not necessary for the resolution of this motion, LG notes that it does make disclosures in compliance with the Energy Star requirements. For example, Munoz acknowledges that the television she purchased in 2016 "came with packaging and other materials prepared by LG." Compl. ¶ 55. Among those "materials" is the Owner's Manual for the television, and LG's Owner's Manuals inform purchasers that "[t]his product qualifies for ENERGY STAR® in the factory default (Home configuration) setting"; *and* that "[c]hanging the factory default settings or enabling other features may increase power consumption that could exceed the limits necessary to qualify for ENERGY STAR®." *See, e.g.*, Owner's Manuals found at http://www.lg.com/us/support-product/lg-58UF8300 (the model tested in the NRDC Report); http://www.lg.com/us/support-product/lg-55LH5750.

[2] It is unclear from Munoz's complaint whether some of her claims are based on the Energy Guide label, the Energy Star logo, or both. Out of an abundance of caution, LG assumes for purposes of this motion that Munoz's use of the defined term "Misrepresentation" in the complaint encompasses both the Energy Guide label and the Energy Star logo.

"plausibility" standard is satisfied only if a complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Similarly, to establish Article III standing "at the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation marks and ellipsis omitted); *see also Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 959 (N.D. Cal. 2015) ("[A]t the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of specific facts plausibly explaining why the standing requirements are met." (quotation marks omitted)). At the motion-to-dismiss stage, "courts must consider the complaint in its entirety, as well as other sources . . . [such as] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.

## ARGUMENT

Munoz's complaint is fundamentally flawed for multiple reasons. To begin with, she lacks standing to pursue her claims against LG because her alleged injuries are not fairly traceable to anything that LG did or refrained from doing. Rather, her quarrel is with the standards mandated by the federal government for the Energy Guide and Energy Star programs.

On the merits, Munoz's complaint should be dismissed for three independent reasons. *First*, Munoz's claims are both expressly and impliedly preempted by the EPCA. Sections 6297(a)(1)(B) and 6297(g), respectively, expressly preempt state-law claims that seek to compel disclosure of additional information regarding energy use, and any warranty claims based on the Energy Guide label. In addition, Munoz's state-law claims stand as an obstacle to the accomplishment of Congress's goals in enacting the Energy Guide and Energy Star programs. And because *all* of Munoz's claims re-package in various ways the same grievance—that the Energy Guide label and Energy Star logo convey an alleged misrepresentation—these claims should be dismissed as well.

*Second*, given that DoE and EPA are exploring ways of modifying their tests for

1   measuring energy use for the Energy Guide and Energy Star programs, this Court should invoke
2   the primary-jurisdiction doctrine and either dismiss the complaint (without prejudice) or stay
3   proceedings until the DoE and EPA have completed their review.

4   *And third*, even if any of Munoz's claims are not preempted, the complaint still fails to
5   state a claim for which relief can be granted. On this front, *Schwartz* provides persuasive
6   guidance why Munoz cannot state a claim based on the Energy Guide label and Energy Star
7   logo. In addition, she cannot satisfy Rule 9(b)'s high bar for pleading fraud claims with
8   particularity. And several of her claims also fail for other reasons.

9   **I.      MUNOZ LACKS STANDING TO SUE LG.**

10   In order to satisfy the "irreducible constitutional minimum" of Article III standing, "[t]he
11   plaintiff must have (1) suffered an injury in fact, (2) that is fairly ***traceable*** to the challenged
12   conduct ***of the defendant***, and (3) that is likely to be redressed by a favorable judicial decision."
13   *Spokeo*, 136 S. Ct. at 1547 (emphasis added) (citing *Lujan v. Defenders of Wildlife*, 504 U.S.
14   555, 560-61 (1992)).

15   Munoz has failed to establish the second element: her alleged injuries are not "fairly
16   traceable" to LG's conduct. All of her claims are based on the allegation that the Energy Guide
17   label and Energy Star logo do not adequately reflect the energy usage that she experiences when
18   she actually uses her television. But the meanings of the Energy Guide label and Energy Star
19   logo are dictated by federal law, not LG. And Munoz does not deny that she received from LG
20   exactly what those symbols represent—a television that complies with the Energy Guide and
21   Energy Star requirements. Thus, Munoz is directing her dissatisfaction toward the wrong party.

22   As this Court has put it, "[i]t is well established that a purchaser of a product who
23   receives the benefit of his bargain has not suffered Article III injury-in-fact traceable to the
24   defendant's conduct." *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *6 (N.D. Cal. Apr.
25   13, 2017). So too here. Like the plaintiff in *Azoulai*, Munoz's claims of economic harm fail to
26   establish standing because she cannot connect those claimed harms to LG's actions. Simply put,
27   Munoz's grievances about the DoE's test standards for energy efficiency are properly directed to
28   the agency itself.

## II.    MUNOZ'S CLAIMS ARE PREEMPTED BY THE EPCA.

"There are three classes of preemption: express preemption, field preemption and conflict preemption." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013) (quotation marks omitted). Here, Munoz's state-law claims are both expressly preempted by federal law and barred by the doctrine of conflict preemption.

### A.    Munoz's Claims Are Expressly Preempted.

"There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 132 S. Ct. 2492, 2500-01 (2012); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("A fundamental principle of the Constitution is that Congress has the power to preempt state law."). "'[T]he purpose of Congress is the ultimate touchstone' in every preemption case." *Medtronic Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). Here, Munoz's claims are expressly preempted by two distinct provisions of the EPCA.

#### 1.    *Munoz's Energy Guide Claims Are Expressly Preempted by Section 6297(a)(1)(B).*

Section 6297(a)(1)(B) provides that:

> Effective on March 17, 1987, this part supersedes any State regulation insofar as such State regulation provides at any time for the disclosure of information with respect to any measure of energy consumption or water use of any covered product if . . . such State regulation requires disclosure of information with respect to the energy use, energy efficiency, or water use of any covered product other than information required under section 6294 of this title.

42 U.S.C. § 6297(a)(1)(B).[3] Section 6294, in turn, authorizes the FTC to promulgate Energy Guide labels for televisions. *Id.* § 6294(a)(2)(I)(i)(I) (televisions); *id.* § 6294(a)(2)(I)(iii)(II) (Energy Guide program).[4]

---

[3] The EPCA defines "State regulation" as "a law, regulation, or other requirement of a State or its political subdivisions." 42 U.S.C. § 6297(a)(2)(A). The term "other requirement" therefore encompasses state-law torts. *See, e.g.*, *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties."); *Cipollone*, 505 U.S. at 552 ("[W]e have recognized the phrase 'state law' to include common law as well as statutes and regulations.").

[4] In *Schwartz*, Vizio did not raise a Section 6297(a)(1)(B) express preemption argument and

9

1   Section 6297(a)(1)(B) expressly preempts Munoz's Energy Guide claims. As an initial
2   matter, Munoz acknowledges that the Energy Guide labels are mandated by the FTC. Compl.
3   ¶ 22 ("The Federal Trade Commission ('FTC') requires all televisions manufactured after May
4   10, 2011 to affix or display ENERGYGUIDE labels."). She alleges, however, that the Energy
5   Guide label is misleading, because "a single glance at one of Defendant's ENERGYGUIDE
6   labels communicates the message that the Products are among the most energy efficient of
7   televisions." Compl. ¶ 8; *see also* Compl. ¶ 20 ("LG communicates the Misrepresentation
8   through . . . the ENERGYGUIDE labels affixed to its televisions."). According to her, the NRDC
9   report makes the supposed statement conveyed by the Energy Guide label inaccurate.

10   At its core, then, Munoz's contention is that the Energy Guide label alone is inadequate
11   to inform consumers about products' energy usage, so state law requires LG to disclose *more*
12   information about energy use and energy efficiency than the Energy Guide label contains. But
13   Section 6297(a)(1)(B) clearly prohibits States from requiring "disclosure of information . . .
14   *other than* information required under section 6294." 42 U.S.C. § 6297(a)(1)(B) (emphasis
15   added). In other words, Section 6297(a)(1)(B) establishes the entire universe of information
16   about energy use and energy efficiency that States can require be disclosed to consumers.
17   Munoz's claims are premised on going above and beyond the federally mandated scope of
18   information—and are therefore preempted.

19   The Ninth Circuit's reasoning in *Air Conditioning & Refrigeration Institute v. Energy*
20   *Resources Conservation & Development Comm'n*, 410 F.3d 492 (9th Cir. 2005), is instructive.
21   The Court rejected claims that California's disclosure laws were preempted by Section
22   6297(a)(1)(B), but only because they required appliance manufacturers to submit certain
23   information to a California state agency, while Section 6297(a)(1)(B)'s "'disclosure of
24   information' [language] only refers to *consumer-directed labeling* at point of sale or use." *Id.* at
25   500 (emphasis added). Here, by contrast, Munoz *is* challenging the Energy Guide label's
26   disclosure of information to consumers.

27   The Ninth Circuit also confirmed that the Congressional purpose underlying the
28   _____
    therefore the court did not reach this issue.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS;
Case No. 5:17-cv-01176-BLF

preemption provisions of the ECPA was to foreclose claims like those Munoz brings here. The court explained that in designing the EPCA, Congress sought "to reduce the United States' 'domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs.'" *Id.* at 498-99 (quoting S. Rep. No. 94-516, at 117 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1956, 1957). According to the court, "Congress believed that better informed consumers and voluntary efforts by manufacturers would make energy efficiency standards unnecessary" and "[t]herefore, Congress required manufacturers to label their appliances." *Id.* at 499. Given this statutory framework, the court reasoned that the "EPCA's express preemption provisions dealt primarily with the possibility that states would adopt different test procedures or consumer labeling requirements." *Id.* Although Congress has revised the EPCA since its initial enactment—for instance, by "establish[ing] federal energy efficiency standards for residential appliances," *id.* at 500—the court concluded that the "purpose" of the "original version of the current labeling and testing pre-emption provision" remains "unchanged since then." *Id.* at 498; *see also Medtronic*, 518 U.S. at 485 (noting that Congressional "purpose" is the "touchstone" of the express preemption inquiry). And because the purpose of Section 6297(a)(1)(B) is to preempt contrary state laws that require disclosure of additional information to consumers, Munoz's claims based on the Energy Guide are expressly preempted.

### 2. *Munoz's Energy Guide And Energy Star Claims Are Expressly Preempted by Section 6297(g).*

Section 6297(g) provides that:

> Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provisions of this part *shall not create an express or implied warranty under State or Federal law* that such energy efficiency will be achieved or that such energy use or estimated annual operating cost will not be exceeded *under conditions of actual use*.

42 U.S.C. § 6297(g) (emphasis added).

Because the FTC mandates that LG place Energy Guide labels on its televisions (16 C.F.R. § 305.17)—a point Munoz acknowledges (Compl. ¶ 22)—Section 6297(g) expressly preempts any "express or implied warranty" claims based on the Energy Guide label. In addition, although participation in the Energy Star program is voluntary, once a manufacturer agrees to

1    participate in the program, they must satisfy the Energy Star product criteria to affix an Energy

2    Star logo to their product. 42 U.S.C. § 6294a(c)(4). Indeed, the Energy Star program requires

3    manufacturers to "[c]omply with current ENERGY STAR Eligibility Criteria, which define

4    performance requirements and test procedures for Televisions." RJN Ex. B, at 1 (Energy Star

5    Program Requirements for Televisions); *see also* Compl. ¶ 47 n.25 (citing this document). The

6    manufacturer is thus "required" to "disclos[e] [information] with respect to energy use, energy

7    efficiency, or estimated annual operating cost" to participate in Energy Star. 42 U.S.C. §

8    6297(g). Thus, Munoz's claims based on the Energy Star label are preempted as well.

9          This conclusion is reinforced by three decisions applying Section 6297(g). First, in *Gee v.*

10   *Viking Range Corp.*, 2008 WL 4416442 (N.D. Miss. Sept. 24, 2008), the plaintiff brought

11   express warranty and implied warranty of merchantability claims based on the fact that her

12   refrigerator leaked and therefore "use[d] more energy than was disclosed on the energy label."

13   *Id.* at *1. The court stated that, even though the plaintiff's claims were "couched in terms of the

14   leak," they were "inextricably intertwined with warranty claims which are barred by § 6297(g)."

15   *Id.* at *2. Because the plaintiff's warranty claims about the leak were contingent on her theory

16   that the defendant designed the leak "to circumvent federal energy standard requirements," the

17   claims were expressly preempted. *Id.*

18         Second, in *Jurgensen v. Felix Storch, Inc.*, 2012 WL 2354247 (S.D.N.Y. June 14, 2012),

19   the plaintiff brought state-law breach of warranty and fraud claims based on an allegation that

20   the "Energy Guide labels [affixed] to the [defendant's] Freezers . . . substantially understated

21   their energy consumption." *Id.* at *1 (quotation marks omitted). Relying on *Gee*, the court stated

22   that the "plaintiff's claim for breach of an implied warranty of merchantability—or *any claim*

23   *seeking such a warranty regardless of how the claim is named*—is preempted by 42 U.S.C.

24   § 6297(g)." *Id.* at *5 (emphasis added). Accordingly, the court dismissed the plaintiff's breach of

25   implied warranty of merchantability claim. But it did not stop there. The court also dismissed the

26   plaintiff's unjust enrichment claim because it was "simply a reiteration of the breach of implied

27   warranty of merchantability claim under a different name." *Id.* at *7. Put differently, the unjust

28   enrichment claim was nothing more than a "backdoor [to] a breach of warranty claim." *Id.*

12

Based on *Gee* and *Jurgensen*, Judge Selna recently held in *Schwartz* held that all of the plaintiffs' claims against Vizio involving the Energy Guide label were expressly preempted by Section 6297(g).[5] He concluded—in language equally applicable here—that "section 6297(g) expressly preempts all of Plaintiffs' [Energy Guide] claims . . . because all of those claims allege that the televisions did not perform as promised on a federally-required label." *Schwartz*, 2017 WL 2335364, at *4; *see also id.* (explaining that "Plaintiffs' alleged 'price premium' stems from their allegations that the product used more energy—it did not behave as warranted").

*Gee*, *Jurgensen*, and *Schwartz* require dismissing not only Munoz's express and implied warranty claims—a result that is inescapable given Section 6297(g)'s plain text—but *all* of her claims. That is because all of Munoz's claims are based on the supposed "Misrepresentation" of energy efficiency conveyed by the Energy Guide label and Energy Star logo. Compl. ¶ 20; *see* Compl. ¶ 72 (Count I), ¶ 78 (Count II), ¶ 90 (Count III), ¶ 96 (Count IV), ¶ 100 (Count V), ¶ 105 (Count VI), ¶ 108 (Count VII), ¶ 112 (Count VIII), ¶ 117 (Count IX), ¶ 124 (Count X), ¶ 132 (Count XI), ¶ 142 (Count XII). The same was true of the plaintiffs' claims in *Schwartz*—which is why the district court dismissed *all* of the Energy Guide claims on preemption grounds, regardless of the cause of action under which those claims were packaged. *Schwartz*, 2017 WL 2335364, at *4. As in *Schwartz*, all of Munoz's claims are simply a "reiteration" or "backdoor" of her warranty claims (*Jurgensen*, 2012 WL 2354247, at *7) and "inextricably intertwined" with those claims (*Gee*, 2008 WL 4416442, at *2). Accordingly, this Court should dismiss all of her claims as expressly preempted by Section 6297(g).[6]

---

[5] Unlike LG here, Vizio did not argue in *Schwartz* that Section 6297(g) preempted the plaintiffs' Energy Star claims.

[6] Munoz likely will rely on *Avram v. Samsung Electronics America, Inc.*, 2013 WL 3654090 (D.N.J. July 11, 2013), to argue that her Energy Star claims are not expressly preempted by Section 6297(g) because participation in the Energy Star program is voluntary, and therefore any disclosure of information is not "required" by federal statute. Respectfully, that reasoning ignores the *mandatory* requirements that are triggered by participation in the Energy Star program. And, unlike in this case, the plaintiff in *Avram* alleged that the manufacturer was *not* in compliance with the Energy Star requirements, as the DoE itself had determined. In any event, *Avram* is inapplicable to Munoz's Energy Guide claims, as that label is required by statute.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS;
Case No. 5:17-cv-01176-BLF

**B.      Munoz's Energy Guide And Energy Star Claims Are Conflict Preempted.**

Conflict preemption occurs "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 132 S. Ct. at 2501 (quotation marks and citation omitted). Here, Munoz's efforts to impose state-law liability based on the federally-regulated Energy Guide label and Energy Star logo—both of which use the same test for energy consumption when the television is in its "Default Picture Setting" (*see*, *e.g.*, RJN Ex. B)—stands as an "obstacle" to those federal programs. *Id.*

As discussed, Energy Guide is a mandatory label designed to give consumers more information about the cost and energy consumption of their televisions. And the Energy Star logo is likewise designed to inform consumers that any product bearing that logo meets the *federal* government's *uniform* testing standards for energy efficiency. In other words, Energy Star's meaning derives from the fact that each type of product is tested under the same standard, so that an Energy Star logo on a product in California means the exact same thing as the same logo on the same product in Illinois, New York, or Florida. Specifically, the logo means that a television has a certain level of energy efficiency when operated under its "Default Picture Setting"—which allows consumers to compare the energy efficiency of televisions based on their *out-of-the-box* settings.

Plaintiff herself acknowledges that the Energy Star logo is "one of the most recognizable, *global* symbols for energy efficiency." Compl. ¶ 32 (emphasis added); *see also id.* ¶¶ 34-35 (discussing surveys showing that U.S. households recognize the Energy Star logo). Multiple federal entities have strived to achieve this high level of recognition and respect. Congress instructed the DoE and EPA with "preserv[ing] the integrity of the Energy Star label." 42 U.S.C. § 6294a(c)(3). And the FTC, in imposing the Energy Guide label requirements for televisions, stated that "the ENERGY STAR test procedure is adequate to test televisions as they are typically used by consumers" and that "using the ENERGY STAR procedure [for the Energy Guide label] would provide uniformity across the U.S. government." Disclosures Regarding Energy Consumption and Water Use of Certain Home Appliances and Other Products Required Under the Energy Policy and Conservation Act (Appliance Labeling Rule), 76 Fed. Reg. 1038,

14

1    1040 (Jan. 6, 2011). The Energy Star program also limits the logo's use to "qualified products."

2    RJN Ex. B, at 1.

3         Allowing Munoz's claims to go forward based on her grievances with the Energy Guide

4    label and Energy Star logo would undermine these federal programs. Again, Munoz is *not*

5    alleging that LG has failed to comply with federal testing requirements or that LG's televisions

6    should not qualify for the Energy Star logo. Rather, her claim is that the federal test itself—and

7    the Energy Guide label and Energy Star logo that result—reflects an inadequate and misleading

8    measure of energy cost and consumption. If lawsuits challenging these federal programs under a

9    patchwork of state-law tort regimes are permitted to go forward, that would undermine the

10   uniform meaning that the federal government intended the Energy Guide label and Energy Star

11   logo to convey—instead allowing each state's tort-law regime to dictate the energy efficiency

12   standards of products bearing the Energy Star logo.

13        The conflict is particularly acute given the voluntary nature of the Energy Star program.

14   If participation in the Energy Star program forces manufacturers to operate in "the shadow of 50

15   States' tort regimes," the "dramatically increase[d] . . . burden[]" of participating in the program

16   will discourage participation. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350

17   (2001). Moreover, the potential for dozens of conflicting standards for measuring energy

18   efficiency will undermine the uniformity of the federal programs. These readily foreseeable

19   results from the imposition of tort liability would impede the "execution of the full purposes and

20   objectives of Congress" in passing the Energy Star program. *Arizona*, 132 S. Ct. at 2501.

21        Using state-law standards to dictate a different result than the one required by federal law

22   is precisely the maneuver that the Supreme Court rejected in *Geier v. American Honda Motor*

23   *Co.*, 529 U.S. 861 (2000). There, the plaintiff sought to hold the auto manufacturer liable for

24   failing to equip her vehicle with an airbag—even though the vehicle was in compliance with the

25   regulation then-in-effect, which gave auto manufacturers a choice whether to install air bags. *Id.*

26   at 865. The Court concluded that making airbags optional reflected the federal government's

27   considered policy judgment that a "variety and mix of [safety] devices" were desirable. *Id.* at

28   881. Turning to the plaintiff's claim, the Court explained that the "tort action depends upon [the]

15

claim that manufacturers had a duty to install an airbag" and that "[s]uch a state law—*i.e.*, a rule of state tort law imposing such a duty—by its terms would have required manufacturers . . . to install airbags rather than other passive restraint systems." *Id.* This result, the Court concluded, "would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Id.* Accordingly, conflict preemption precluded the imposition of state-law tort liability.

So too here. Imposing liability in this case would mean that manufacturers would be forced to comply with potentially dozens of tests for energy efficiency and related disclosure requirements in order to participate in the Energy Star program, notwithstanding the federal government's stated goal of encouraging a single uniform standard. The proliferation of these conflicting standards would undermine in the meaning of the Energy Star logo and detract from its simple message—that the product complies with the *federal* Energy Star requirements.

To be sure, the court in *Schwartz* reached a contrary conclusion regarding conflict preemption, concluding that the Energy Star program's "goals do not show 'a clear and manifest' Congressional intent to preempt state-law claims" because the FTC's uniformity statements "were made in the context of determining the appropriate testing procedure for the EnergyGuide labels." *Schwartz*, 2017 WL 2335364, at *6 (quoting *Arizona*, 132 S. Ct. at 2501). The court also discounted the chance that "tort claims might chill participation in the Energy Star program." *Id.*

Although *Schwartz* correctly dismissed the complaint, LG respectfully submits that the court erred in its conflict preemption analysis. Even Munoz acknowledges the importance of Energy Star as an easy to understand and uniform logo. Compl. ¶¶ 32-34. The Energy Star logo should not mean one thing in California, another in Alabama, and yet another in Connecticut, but that is the inevitable result of subjecting Energy Star manufacturers to a patchwork of state tort liability based on their participation in the Energy Star program. Such liability may also have the perverse result of discouraging manufacturers from participating in the Energy Star program, lest they subject themselves to large damage awards across the country. The court in *Schwartz* failed to afford these concerns adequate weight.

Finally, Munoz will likely cite to *Dzielak v. Whirlpool Corp.*, 120 F. Supp. 3d 409 (D.N.J. 2015) to argue that state tort law does not conflict with the Energy Star program. That

decision is inapplicable for two reasons. First, in *Dzielak*, the relevant products had been "*disqualified* from the Energy Star program" for failing to comply with its standards. *Id.* at 413 (emphasis added). Here, by contrast, Munoz bases her claims on *compliance* with federal standards, not *non-compliance*. Second, the district court improperly based its *conflict* preemption holding on the fact that Congress did not enact an *express* preemption provision. *See id.* at 423 ("Presumably Congress could have enacted a preemption provision; it has not done so."). But this reasoning ignores the well-established rule that "[e]ven in the absence of an express pre-emption provision, . . . state law [can] be impliedly pre-empted where it is 'impossible for a private party to comply with both state and federal requirements.'" *Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2473 (2013).

## III.   THIS CASE SHOULD BE DISMISSED OR, ALTERNATIVELY, STAYED UNDER THE PRIMARY JURISDICTION DOCTRINE.

Alternatively, the Court should dismiss or stay Munoz's claims under the primary jurisdiction doctrine. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* "Th[e] doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharm. Research  & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring in part and concurring in the judgment).

"Although '[n]o fixed formula exists for applying the doctrine of primary jurisdiction,'" the Ninth Circuit has "traditionally" examined four factors:  "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87  (9th Cir. 2006) (alteration in

17

original) (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). And of critical importance here, "[p]rimary jurisdiction may be invoked when an agency is addressing an issue through formal rule-making procedures." *Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108, 1111 (S.D. Cal. 2014).

Here, the Court should dismiss or (at minimum) stay the case under the primary jurisdiction doctrine. The thrust of Munoz's complaint is that the Energy Guide and Energy Star programs' testing requirements should be modified. That request should be—and *has been*— directed at the relevant federal agencies, as the NRDC Report rightly acknowledges. *See* NRDC Report at 27-28.

Indeed, the federal agencies have responded to the call for reform underlying Munoz's claims. In June 2016, the DoE initiated a rulemaking process "to consider whether revisions are needed to the test procedure for televisions." *Energy Efficiency Program: Test Procedure for Televisions*, 81 Fed. Reg. 41,262, 41,262 (June 24, 2016) (RJN Ex. C). As part of the rulemaking, DoE has solicited comments on "[w]hat alternative video content could DOE use in its test procedure to better capture TV performance during a representative average use cycle or period of use?" *Id.* at 41,277. And in August 2016, the EPA responded to the issues in the NRDC Report and began evaluating how to better test energy efficiency in televisions. NRDC Report at 8. These administrative proceedings are ongoing, and their resolution could shed important light on the issues here. Given that Congress specifically tasked these agencies with administering the Energy Guide and Energy Star programs, and given the technical nature of determining an appropriate and uniform testing method for measuring energy efficiency, this Court should dismiss the complaint (without prejudice) or stay proceedings until the DoE and EPA have completed their proceedings. *See Saubers*, 39 F. Supp. 3d at 1111 (primary jurisdiction doctrine is properly invoked during agency rulemaking process).

Courts in this Circuit routinely invoke the primary jurisdiction doctrine when agencies are evaluating whether a product complies with a highly technical and complex regulatory regime. For instance, in *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), the plaintiff brought state law claims challenging products labeled as "all natural" that contained

certain chemicals. *Id.* at 756. The Ninth Circuit held that, in light of ongoing FDA proceedings on the same issue, the case should be stayed under the primary jurisdiction doctrine. *Id.* at 761. Numerous other courts are in accord. *See, e.g.*, *Kane v. Chobani, LLC*, 645 F. App'x 593 (9th Cir. 2016); *Saubers*, 39 F. Supp. 3d at 1111; *Gitson v. Clover Stornetta Farms*, 2014 WL 2638203, at *8 (N.D. Cal. June 9, 2014); *Swearingen v. Late July Snacks LLC*, 2014 WL 2215878, at *3 (N.D. Cal. May 29, 2014); *Avila v. Redwood Hill Farm & Creamery, Inc.*, 2014 WL 2090045, at *3 (N.D. Cal. May 19, 2014); *see also In re Kind LLC "Healthy and All Natural" Litig.*, 209 F. Supp. 3d 689 (S.D.N.Y. 2016). This Court should follow this well-trodden path to preserving judicial resources and deferring to agency expertise by dismissing the complaint or staying the proceedings until the EPA and DoE have finished their assessments of whether the Energy Guide and Energy Star programs' testing requirements should be modified.

To be sure, in *Schwartz* the Court did not rely on primary jurisdiction because the plaintiffs "d[id] not allege that Vizio failed to comply with the government's testing procedures" and thus "there [was] no risk of inconsistent rulings between this Court and administrative agencies." *Schwartz*, 2017 WL 2335364, at *7. Here, likewise, Munoz does not allege that LG's televisions failed the government's testing protocol or that they should be disqualified from the Energy Star program. But that is not the end of the inquiry. Under "[Ninth Circuit] precedent, 'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Astiana*, 783 F.3d at 760 (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 115, 1165 (9th Cir. 2007)). And here, it is more efficient for experienced regulators to determine directly the appropriate technical testing protocol for the Energy Guide and Energy Star programs rather than to allow private plaintiffs to use state-law causes of action to alter those programs indirectly.

## IV. EVEN ASSUMING THAT MUNOZ'S CLAIMS ARE NOT PREEMPTED, THE COMPLAINT FAILS TO STATE A CLAIM.

### A. This Court Should Follow *Schwartz* And Dismiss The Complaint For Failure To State A Claim.

Faced with near-identical allegations in *Schwartz* (drafted by the same plaintiff's law firm), Judge Selna concluded that even if the plaintiffs' claims were not preempted, the complaint nevertheless failed to state a claim. And while *Schwartz* involved Illinois and

19

Pennsylvania law rather than California law, the differences are of no moment.

The court in *Schwartz* dismissed all of the plaintiffs' claims for three reasons: "Plaintiffs cannot maintain any of their claim[s] because they do not (1) identify any statement to create an express warranty, (2) claim that [defendant's] products were not fit for their ordinary purpose, and (3) allege a specific misrepresentation." *Schwartz*, 2017 WL 2335364, at *7. Each of these reasons is equally applicable here.

> **1.     *Munoz's Express Warranty Claim Fails Because Neither The Energy Guide Label Nor Energy Star Logo Constitutes An Express Warranty By LG.***

"Under California law, any affirmation of fact or promise relating to the subject matter of a contract for the sale of goods, which is made part of the basis of the parties' bargain, creates an express warranty." *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997). Thus, to state an express warranty claim under California law, a plaintiff must allege that "the seller's statement amounts to an 'affirmation of fact or promise.'" *Id.* (quoting *Keith v. Buchanan*, 173 Cal. App. 3d 13, 19 (1985)). The same was true of the express warranty claims at issue in *Schwartz*. *Schwartz*, 2017 WL 2335364, at *7 ("Under Illinois law, a claim for breach of an express warranty requires the plaintiff to allege that '(1) the seller made an affirmation of fact or promise.'" (quoting *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891-92 (N.D. Ill. 2014))); *id.* ("Pennsylvania law contains the exact same elements.").

The court in *Schwartz* concluded that the "[p]laintiffs cannot state a claim for express warranty because neither the EnergyGuide nor the EnergyStar label contains a promise that formed part of the basis for the bargain." *Schwartz*, 2017 WL 2335364, at *7. That is because the Energy Guide label only includes an *estimated* annual energy cost and expressly states that a user's costs may vary depending on utility rates and use. *Id.* The Court also rejected the plaintiffs' attempts to transform the Energy Guide label and Energy Star logo into "specific factual promise[s]." *Id.* at *8. After all, "[t]he mere use of symbols does not constitute an affirmative statement." *Id.* The same reasoning applies here: Munoz's express warranty claim is based entirely on the Energy Guide label and Energy Star logo—neither of which convey a specific factual promise. In all events, the only promise they could even conceivably convey is

20

that a television has a certain level of energy efficiency in its *default* setting—a promise that Munoz does not allege was breached. Count I therefore fails for this additional reason.

**2.** ***Munoz Cannot State A Claim For Breach Of The Implied Warranty Of Merchantability Because She Does Not Allege That Her LG Television Was Not Fit For Its Ordinary Purpose.***

"The California Commercial Code implies a warranty of merchantability that goods '[a]re fit for ordinary purposes for which such goods are used.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (alteration in original) (quoting Cal. Com. Code § 2314(2)(c)). "A breach of the warranty of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App.4th 402, 406 (2003)). Once again, the state laws for breach of the implied warranty of merchantability at issue in *Schwartz* contained an identical requirement that the goods be "fit for the ordinary purpose for which the goods are used." *Schwartz*, 2017 WL 2335364, at *8.

Relying on *Rossi v. Whirlpool Corp.*, 2013 WL 5781673, at *3 (E.D. Cal. Oct. 25, 2013)—where the Court rejected a similar challenge to the energy efficiency of refrigerators—the district court in *Schwartz* correctly concluded that the plaintiffs were defining the "ordinary purpose" of the televisions too narrowly. In other words, the plaintiffs were improperly emphasizing the energy efficiency aspect of the televisions and thereby ignoring their "ordinary purpose": to watch television. *See Schwartz*, 2017 WL 2335364, at *8-9; *see also Webster's II New Riverside University Dictionary* 1190 (1988) (defining "television" as "[a]n electronic device that receives electromagnetic waves and displays the reconverted images on a screen"); *Rossi*, 2013 WL 5781673, at *6-7 (agreeing with Whirlpool that the refrigerator's ordinary purpose is "to keep food cold," not "to keep food cold while using 20% less energy"). In addition, the Court noted that, even if energy efficiency were relevant to the implied warranty of merchantability inquiry, the plaintiffs failed to allege that the "defendants' products d[o] not comply with the Energy Star requirements." *Schwartz*, 2017 WL 2335364, at *9.

The same is true here.  Munoz does not claim that her television does not function as a television. And like the plaintiffs in *Schwartz*, Munoz does not allege that LG's televisions do not comply with the Energy Star requirements. Thus, Munoz has failed to state an implied

21

1

2

3

warranty claim and the Court should accordingly dismiss Count II.

**3.** ***Munoz Cannot Maintain Her Fraud Claims For Two Independent Reasons.***

        a.    *Munoz's Fraud Claims Fail Because She Does Not Allege a Fraudulent Statement.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

In *Schwartz*, the court concluded that the "remaining claims all require some form of false statement or material omission" and "[t]his includes Plaintiffs' consumer protection claims because these rely on the alleged misrepresentation." 2017 WL 2335364, at *9. Once again, the same is true here. All of Munoz's claims require either a false statement or material omission, or merely re-package her claims about the Energy Guide label and Energy Star logo. *See*, *e.g.*, *R Power Biofuels, LLC v. Chemex LLC*, 2017 WL 1164296, at *10 (N.D. Cal. Mar. 29, 2017) (The elements of intentional misrepresentation include "a misrepresentation (false representation, concealment, or nondisclosure)."); *Graham v. Bank of Am., N.A.*, 226 Cal. App.4th 594, 606 (2014) ("The required elements for fraudulent concealment [include] concealment or suppression of a material fact."); *Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996) (Fraud requires a "misrepresentation (false representation, concealment, or nondisclosure)."); *supra* at 6, 13 (explaining that all of Munoz's claims are premised on the alleged misrepresentation conveyed by the Energy Guide label and the Energy Star logo). As a result, the court in *Schwartz* determined that the remaining claims "fail for the same reason that Plaintiffs' breach of express warranty claim fails—Plaintiffs do not identify any actual statement by [the defendant]." *Schwartz*, 2017 WL 2335364, at *9. Furthermore, the court held that the complaint's "conclusory statement" that the televisions "are among the most energy-efficient of televisions" was insufficient to survive Rule 12(b)(6). *Id. Schwartz*'s reasoning is persuasive on this point as well. Munoz simply points to her allegations about the Energy Guide label and Energy Star logos to advance her claim that LG made some unspecified false statement about energy efficiency. But these symbols do not qualify as such a statement.

25

        b.    *Munoz Also Fails To Plead Her Fraud Claims With The Particularity Required By Rule 9(b).*

26

27

28

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Rule 9(b)

22

requires particularized allegations of the circumstances constituting fraud, including identifying the statements at issue and setting forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). This means that a party must allege "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *see also Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (same). Rule 9(b) applies "[r]egardless of the title given to a particular claim." *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016).

Munoz has not plead her claims with the required specificity. Munoz has not alleged where she purchased her television, nor from whom. Munoz has also not specifically alleged that she relied on the Energy Guide label in purchasing her television; the paragraphs of the complaint that focus on her "experiences" explicitly reference only the Energy Star logo. Compl. ¶¶ 51-56. In addition, Munoz has failed to allege that any statements made to her through the Energy Star logo somehow "were false or misleading at the time they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d at 876. On the contrary, she appears to acknowledge that her television complies with the Energy Star criteria. Nor, finally, does Munoz specify the circumstances of LG's supposed fraudulent knowledge or intent (because there is none). Munoz's claims that sound in fraud should be dismissed under Rule 9(b).

### B.   Munoz's Remaining Claims Also Fail For Independent Reasons.

Munoz's claims all arise from one grievance—the alleged misrepresentation of energy efficiency conveyed by the Energy Guide label and Energy Star logo—but her claims for relief "reflect[] a veritable kitchen sink approach" to pleading. *Keenan v. Shinseki*, 2012 WL 6628923, at *3 (E.D. Cal. Dec. 19, 2012). Although her claims can be dismissed in their entirety in multiple ways, *see supra* at 9-17 (preemption), 20-23 (failure to state a claim based on the analysis in *Schwartz*), several of her causes of action also fail for other reasons.

#### 1.   *Munoz's Warranty Claims Should Be Dismissed For Failure to Allege Pre-Suit Notice.*

Munoz has failed to allege that she provided LG with notice of the breach of express

23

warranty and the implied warranty of merchantability. Under California law, a plaintiff must plead that she provided the defendant with pre-suit notice of a breach of express warranty. *See Orichian v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1333-34 (2014) ("The essential elements of a cause of action . . . for breach of an express warranty" includes "the buyer's notice to the seller of such a defect within a reasonable time after its discovery."); *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015) ("[T]o state a claim for breach of express warranty . . . the Plaintiff must allege that he has given pre-suit notice to the defendant of the alleged breach of warranty to allow the defendant an opportunity to cure the defect outside of court."). The same pre-suit notice requirement exists for an implied breach of merchantability. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710, at *9 (N.D. Cal. Mar. 14, 2014) ("Breach of implied warranty claims are subjected to the reasonable pre-suit notice requirement."); *Park-Kim v. Daikin Indus., Ltd.,* 2016 WL 5958251, at *20 (C.D. Cal. Aug. 3, 2016) (dismissing both express and implied warranty claims for failure to provide pre-suit notice). Accordingly, Counts I and II should be dismissed.

## 2.   *Munoz Has Failed To Allege That LG Had A Duty To Disclose.*

Munoz's fraudulent concealment/nondisclosure claim fails because LG had no duty to disclose the allegedly concealed "true energy consumption of the televisions" (Compl. ¶ 131). *See Maynard v. Wells Fargo Bank, N.A.*, 2013 WL 4883202, at *8 (S.D. Cal. Sept. 11, 2013) ("[T]o establish a cause of action for fraudulent concealment, a plaintiff must plead . . . the defendant was under a duty to disclose the fact to the plaintiff."). As the Court in *Jurgensen* explained, there is no duty to disclose allegedly material information where "the transaction at issue is . . . a simple purchase of a product" and there is no allegation of a "business relationship . . . between plaintiff or defendant[]" nor a "fiduciary relationship." *Jurgensen*, 2012 WL 2354247, at *9. Thus, Count XI should be dismissed.

## 3.   *Munoz Has Not Alleged A Contract With LG.*

Munoz has failed to allege that she had a contract with LG. As discussed above, Munoz has not even alleged from *whom* she purchased her television. And given the absence of alleged privity between Munoz and LG, *see Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188,

1195-96 (C.D. Cal. 2014), she cannot transform an Energy Guide label or an Energy Star logo into a contract. Finally, even if there were a contract, Munoz has not alleged how any such contract was breached, given that LG sold her a television that complies with the Energy Guide and Energy Star requirements. Count V should therefore be dismissed.

**4.     *Munoz's Unjust Enrichment Claim Should Be Dismissed Because Some California Courts Do Not Recognize That As A Cause Of Action.***

Although there is a division among the district courts in California (*see Cox v. Old Republic Nat'l Title Ins. Co.*, 2016 WL 301974, at *14 (N.D. Cal. Jan. 25, 2016)) and this Court has held in the past that unjust enrichment can be pleaded as a separate cause of action (*see Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1260 (N.D. Cal. 2014)), LG respectfully submits and preserves the argument that unjust enrichment is not a cause of action but merely a means of recovery. *See, e.g.*, *Bernardi v. JPMorgan Chase Bank, N.A.*, 2012 WL 2343679, at *3 (N.D. Cal. June 20, 2012) (unjust enrichment "is not an independent cause of action under California law"). In all events, Munoz's unjust enrichment claim fails on the merits for all of the reasons discussed above: there is nothing unjust about LG's selling televisions that are in full compliance with the Energy Guide and Energy Star standards. *See Mohebbi*, 50 F. Supp. 3d at 1261 (dismissing unjust enrichment claim on the merits). Accordingly, Count VI should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should grant LG's motion to dismiss.

Dated:  June 5, 2017

MAYER BROWN LLP
JOHN NADOLENCO
ARCHIS A. PARASHARAMI
DANIEL E. JONES

By:   */s/ John Nadolenco*
        John Nadolenco
*Attorneys for Defendant LG Electronics U.S.A., Inc.*